In the Matter of JOSEPH A. WALSH, an Attorney, Respondent.

First Department, July 6, 1926.

**Attorney and client — disciplinary proceedings — attorney disbarred for conversion of funds collected for client.**

The respondent, an attorney at law, who was heretofore suspended on other charges, is disbarred for converting funds collected on an insurance policy for one of his clients, notwithstanding that the amount so converted has been returned to the client.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie,* for the petitioner.

*Robert H. Elder,* for the respondent.

CLARKE, P. J. The respondent was admitted to practice as an attorney and counselor at law at the February, 1910, term of

the Appellate Division in the Second Department. The petition charges him with professional misconduct in that on January 30, 1923, the respondent was retained by John Ratto to recover from the Home Insurance Company the amount of insurance due him from this company under a policy on his automobile that had been stolen. The respondent received $50 as a retainer and it was agreed that he was to retain fifty per cent of any amount recovered over and above $1,000, the $50 to be credited on his share of any such recovery. After respondent had instituted an action against the Home Insurance Company in the City Court, the claim was settled and respondent received a check from this company to his order as attorney for John Ratto, dated April 4, 1923, in the amount of $1,300, in full satisfaction of any claims under the policy. Respondent failed to advise his client, or any one representing him, of the receipt of this check. On or about July 1, 1923, he promised his client that he would obtain the check from the insurance company and mail it to him, although the money had been in respondent's possession for almost three months before this date. Early in August, 1923, Ratto and his brother-in-law, Zottarelli, went to the office of the insurance company and were informed that a check for $1,300 had been given respondent in April, 1923. On August 3, 1923, when his client informed respondent of the information he had received at the offices of the insurance company, respondent at first denied it but finally gave Ratto his personal check for $1,200 dated August 7, 1923. This check, though deposited twice, was returned by the bank on which it was drawn because of insufficient funds. From this time until September 27, 1923, the date when the complaint was first made to the petitioner herein, respondent gave to his client's brother-in-law, Zottarelli, several checks on account of the money that he owed to his client, some of which were paid and others were returned by the bank because of insufficient funds. On September 27, 1923, a balance was then due the client of $150. On or about November 14, 1923, the respondent paid the balance of $150 still due. Prior to the various dates on which respondent made payments to his client as aforesaid, he converted to his own use the money still due to his client.

The learned official referee, to whom the matter was referred by this court, states in his report that Ratto testified that he agreed to settle his case against the Home Insurance Company, and waited to ascertain the result until July 20, 1923; that on that date he mailed to the respondent a registered letter as follows:

" Dear Sir.— Sorry to tell you that to me it seems as though you do not take the proper interest in my claim. From the date

you promised me to get the check from the Home Insurance Co. of $1300 (thirteen hundred) and mail to me, another 20 (twenty) days have elapsed without result. It seems that if you had given more attention to the claim you would have obtained the permission from the Hudson Motor Company to take the check from the Home Insurance Company. I think the Hudson Motor Company would not deny this permission and would accept to give me the liberty to act against them for the difference of the claim. As per our conversation yesterday, I called you up twice, without result of being connected with you. In case you have not the sufficient time to take care of it, please tell me so. I hope to hear from you by Monday."

Ratto further testified that he had previously inquired of the respondent in relation to the settlement and was informed by him that it had not yet been completed; that on August 3, 1923, he went to the office of the Home Insurance Company and there saw the check for $1,300, which had been given to the respondent in the early part of April, 1923; and that this was the first intimation he had that the money had been collected from the insurance company; that he forthwith went to the respondent's office and told him that he had visited the office of the insurance company, where he had been shown the check for $1,300 with respondent's indorsement thereon, and then demanded the payment of his share of the collection; that the respondent then gave Ratto a check for $1,200 dated August 7, 1923, being post-dated four days. The check was presented at the bank on which it was drawn and payment refused because of insufficient funds. Thereafter Ratto called on respondent and told him that the check for $1,200 had not been paid at the bank. The respondent then gave him two checks, one for $500 dated August 15, 1923, and one for $700 dated August 20, 1923. The $500 check was paid when presented, but the $700 check was dishonored because of insufficient funds to meet it. Subsequently a demand was made on the respondent for the payment of the $700, at which time respondent gave a check for $500 dated September 10, 1923, which was paid when presented, but the balance of $200 was not paid to Ratto up to the time that he went to the Bar Association and complained of the respondent.

The transcript of the respondent's bank account shows that a draft for $1,300 was deposited in his " attorney's account." The respondent also had a personal bank account. From the " attorney's account," after depositing the money, he withdrew the greater part, so that his balance on April 16, 1923, was reduced to $584.51, and from that time to August, 1923, there was no time when

sufficient funds were on deposit to the credit of the respondent to pay the money. The balance in his personal account was small, and the combined accounts were insufficient to pay Ratto's claim.

The learned referee reports his conclusion that the conventional relation of lawyer and client existed between John Ratto and the respondent; that respondent received a draft from the Home Insurance Company on April 4, 1923, and failed to notify Ratto that he had received the same for and on his account and benefit; that the respondent withheld from his client the sum of $1,200, to which the client was entitled out of the proceeds of the settlement of the action from April 4, 1923, and that Ratto was not apprised that the money had been collected until August 3, 1923, at which time he saw the original draft in the office of Mr. Crosby of the insurance company, whereupon Ratto forthwith informed the respondent thereof; that the check dated August 20, 1923, was then delivered by the respondent for moneys collected by the respondent for Ratto; and says, "the conclusion is irresistible from the evidence that the respondent received and used his client's money without authority."

We have read the entire record and are satisfied with the conclusion of the learned official referee and approve the same. There can be, upon the record, no doubt that the respondent improperly and unlawfully converted his client's money to his own use, and that his attempted explanation did not explain, and that the final payment after proceedings were instituted did not condone or wipe out the offense. We have so often laid down the rule that moneys received by an attorney for his client are trust funds that it is not necessary to elaborate upon that proposition. This is not the first time that the respondent has been before the courts in disciplinary proceedings. Upon charges for the conversion of trust funds he was suspended for three years in 1913 by the Appellate Division in the Second Department (154 App. Div. 947). He seems to have learned nothing from that experience. There is no ground for leniency.

The evidence before us supports the charge, and upon the facts proven the respondent cannot be allowed to longer remain a member of the bar. The judgment of this court, therefore, is that he be disbarred.

DOWLING, FINCH, McAVOY and MARTIN, JJ., concur.

Respondent disbarred. Settle order on notice.